United States District Court
Southern District of Texas
**ENTERED**
August 04, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Manrique Zavala, | § § § | |
| *Plaintiff,* | § § § | Case No. 4:20-cv-04045 |
| v. | § § | |
| Kilolo Kijakazi, Acting Commissioner, Social Security Administration, | § § § § | |
| *Defendant.* | | |

## MEMORANDUM AND RECOMMENDATION

This matter comes before the Court on cross-motions for summary judgment. Plaintiff Manrique Zavala asks this court to reverse the Social Security Administration's denial of disability insurance benefits or, alternatively, remand the case to the agency for further explanation. Dkt. 22. Defendant Commissioner of Social Security requests affirmance on the grounds that the decision was supported by substantial evidence. Dkts. 23, 24. After reviewing the briefs, the record, and the applicable law, it is recommended that the Court affirm the decision of the Social Security Administration.

## Background and Procedural History

From 2001 until 2003, Mr. Zavala served as a security forces member of the United States Air Force. R.239, 245. During that time, Mr. Zavala experienced trauma, including watching one of his fellow servicemembers die. R.48. Around the same time, he also was involved in a car wreck which, coupled with a gym injury a few years later, led to persisting pain in his lower and middle back. R.47-48. After separating from the military in 2003, Mr. Zavala held a variety of jobs, including as a sales representative for the cell phone companies Sprint and T-Mobile. *See* R.42, 239.

Mr. Zavala primarily obtained treatment for his conditions through the Department of Veteran's Affairs ("VA"). Mr. Zavala receives 100% disability compensation from the VA, and through those benefits, has access to physical therapy, aquatic therapy, steroid injections, chiropractic treatment, and pain management treatment. R.21, 465. Starting in 2016, Mr. Zavala sought treatment for his physical and psychological limitations. *See generally*, R.315-1667. In some instances, the doctors reported—as Mr. Zavala claims—that his condition had declined. *See* R.469. But in others, his doctors reported that the treatments had successfully alleviated his back pain or helped him manage his anxiety, depression, and post-traumatic stress disorder. *See* R.1316 (noting Mr. Zavala's more positive mental outlook).

In October 2018, Mr. Zavala applied for social security benefits, claiming that he is totally disabled. R.154. After the Commissioner denied his claim, he requested review by an Administrative Law Judge. R.96 (denial), R.111 (request for hearing). After holding a hearing and obtaining testimony from a vocational expert, the ALJ determined that Mr. Zavala's limitations rendered him unable to perform his past relevant work. R.120. But the ALJ also found that Mr. Zavala could still perform work that existed in significant numbers in the national economy and denied his request for disability insurance benefits. R.20-27. After the Social Security Appeals Council affirmed that denial, R.2, Mr. Zavala sought review from this Court. *See* Dkt. 1.

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotations omitted). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*,

67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted). When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## Analysis

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). "Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof in the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

4

Mr. Zavala challenges two portions of the ALJ's findings. First, he disputes the ALJ's formulation of his residual functional capacity ("RFC"). Dkt. 22 at 4-12. Second, he argues that the ALJ committed legal error by failing to analyze his 100% disability rating from the VA. *Id.* at 12-14.

## I. Substantial evidence supports the ALJ's formulation of Mr. Zavala's residual functional capacity.

Mr. Zavala's lead contention asserts that the ALJ improperly "cherry-picked" information regarding Mr. Zavala's mental health impairments when formulating his RFC, instead of viewing the record as a whole. Dkt. 22 at 5-9. This contention should be rejected because the ALJ adequately considered Mr. Zavala's impairments.

### A. The ALJ properly formulated Mr. Zavala's RFC.

The RFC is a predicate to steps four and five that determines "the most the claimant can do despite [his] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005)). When formulating a claimant's RFC, an ALJ examines the totality of the circumstances surrounding a claimant's impairments. *See* 20 C.F.R. § 404.1545(e). The ALJ must consider all relevant medical opinions and evaluate them based on several factors. *See* 20 C.F.R. § 404.1520c(c) (enumerating the factors). Permissible reasons for discounting medical

testimony include contradictory medical reports from other physicians or a claimant's lack of credibility. *See Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (affirming ALJ's rejection of the plaintiff's claims of excessive pain as unsupported by her medical history); *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (affirming ALJ's denial of benefits in the face of contradicting medical evaluations). Although the ALJ must explain how he determined that any medical testimony lacks support or is inconsistent with other evidence, the ALJ need not address all the relevant factors. *See* SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ established an RFC for Mr. Zavala's that permits light work, occasionally climbing of ramps or stairs, never climbing ladders, ropes, or scaffolds, and occasionally performing postural maneuvers like stooping or kneeling. *See* R.20. The ALJ found that Mr. Zavala can perform simple, routine, repetitive tasks requiring up to three-step instructions that are not performed in a fast-paced production environment, involve only simple, work-related decisions, and generally require few workplace changes in a routine work setting. *Id.* The ALJ also found that Mr. Zavala was limited to occasional interaction with supervisors, coworkers, and the public. *Id.*

The ALJ's conclusions regarding Mr. Zavala's physical limitations associated with his persistent back pain and spinal disorders are not particularly disputed. Instead, Mr. Zavala insists that his mental

6

impairments, particularly his symptoms of depression and anxiety that stem from those physical limitations, are more limiting than the ALJ recognized in the RFC. *See* Dkt. 22 at 5-10; R.18-19. Mr. Zavala points primarily to some recent medical records that reflect more severe mental health limitations. A note dated December 10, 2018 described Mr. Zavala as having "worsening symptoms." R.485. In another record, a physician noted on May 24, 2019 that Mr. Zavala began taking new prescription medication due to "worsening symptoms of depression and some OCD-like symptoms." R.469, 472-73. Two others, from September 2019 and mid-2020, indicate that Mr. Zavala was "lashing out" due to his back pain. R.1102, 1581. Apart from those records, Mr. Zavala's wife reported that he "has good days and bad days." R.219.

In parsing these statements—many of which are self-reported—Mr. Zavala commits the same error that he accuses the ALJ of perpetrating. Mr. Zavala selectively picks evidence that supports his position and ignores contrary portions of the record that show his condition had improved or was stable. For example, Mr. Zavala reported that therapy for his anxiety and depression helped alleviate his symptoms. *See* R.1110 (noting in August of 2019 Mr. Zavala's cooperative attitude and that he was not a danger to himself); R.1280 (reporting in October of 2019 that Mr. Zavala was doing well); R.1350 (stating in November of 2019 that therapy has helped improve Mr. Zavala's mood). The fact that Mr. Zavala's impairments responded to

7

treatment suggests that he could do more than he asserts. *See Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) (holding that treatable conditions cannot be the basis of a disabled rating under the SSA).

The ALJ was required to weigh these conflicting pieces of information.[1] And the ALJ did so here when concluding that Mr. Zavala's "statements about the intensity, persistence, and limiting effects of his symptoms appeared inconsistent" with the medical evidence. R.22-23. As the ALJ noted: (1) Mr. Zavala "only received routine and conservative treatment during the relevant period" consisting of pain medications and anti-inflammatories, with few documented adverse side-effects, R.22; and (2) Mr. Zavala had no hospitalizations, his "imaging reports documented only mild findings," and his "physical examinations and mental status examinations appeared largely benign and documented few signs and symptoms," R.23.

In short, the ALJ weighed and resolved the conflicting evidence. This Court cannot second-guess the ALJ's conclusions. *See Whitehead*, 820 F.3d at 782 (courts cannot "reweigh the evidence or substitute [their] judgment for the ALJ's"); *Short v. Berryhill*, 2019 WL 1048293, at *4 (S.D. Tex. Feb. 14, 2019)

---

[1] The Commissioner asserts that the Court should presume the ALJ considered all the evidence, as the ALJ claimed to have done. Dkt. 30 at 2-3 (citing *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)). Even if such a presumption is appropriate in the abstract, it does not override this Court's duty to review the ALJ's decision. *See* 42 U.S.C. § 405(g).

(rejecting contention that examining physician's testimony contradicts the ALJ's RFC determination, noting that "any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court") (citing *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985)). Substantial evidence supports the ALJ's formulation of Mr. Zavala's RFC.

### B. The ALJ properly analyzed the medical expert testimony in this case.

#### 1. The ALJ properly weighed Dr. Fox's conclusions against Mr. Zavala's entire medical record.

Mr. Zavala also asserts that the ALJ erred by rejecting some of Dr. Fox's conclusions about Mr. Zavala's mental impairments. Dkt. 22 at 9-12. Invoking the new regulations, the Commissioner responds that the ALJ correctly found that Dr. Fox's opinions were only partially supported, and that the ALJ was not required to have a medical expert testify at the hearing. Dkt. 30 at 4-6. The Court agrees with the Commissioner.

The regulations governing how an ALJ must analyze a treating physician's opinions changed in 2017. *See* 20 C.F.R. § 404.1520c (governing claims filed after March 27, 2017). For claims filed after March 27, 2017—like Mr. Zavala's, R.77—an ALJ need not afford specific weight to a treating physician's opinion and instead should analyze that opinion under several factors. *See* 20 C.F.R. § 404.1520c. Under this new regime, the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a).

9

The ALJ provided sound reasons for discounting some of Dr. Fox's conclusions. *See* R.24. While the ALJ adopted the portion of Dr. Fox's assessment that limited Mr. Zavala to simple work with pace restrictions, the ALJ found the rest of Fox's report unpersuasive and inconsistent with the record as a whole. *Id.* For instance, part of Dr. Fox's opinion did not square with the totality of Mr. Zavala's mental status examination results. *Compare* R.1322 (noting that Mr. Zavala is incapable of completing complex tasks), *with* R.1323 (noting that Mr. Zavala's short-term and long-term memory appeared to be in the normal range, and that Mr. Zavala had good insight). In fact, the ALJ similarly looked at Mr. Zavala's entire medical history when rejecting other medical opinions suggesting that Mr. Zavala had fewer limitations than the ALJ ultimately established in the RFC. *See* R.24 (concluding "the opinions of all state agency medical consultants and state agency psychological consultants" were "unsupported and inconsistent with the record as a whole").

Under the substantial evidence standard, this Court cannot conduct a *de novo* review of the ALJ's determination. Rather, the Court decides only whether there is sufficient evidence such that "a reasonable mind might accept [it] to support a conclusion." *Greenspan*, 38 F.3d at 236. "The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010). And here, the ALJ adequately

10

explained his conclusion regarding Dr. Fox's opinion, which substantial evidence supports.

> 2. The ALJ properly analyzed the medical evidence when resolving Mr. Zavala's capacity to work.

Mr. Zavala raises two additional challenges to the ALJ's formulating of his RFC. Both contentions are meritless.

First, Mr. Zavala asserts that the ALJ was required to call a medical expert to testify and resolve conflicts in the medical testimony. *See* Dkt. 22 at 10-11. Although the ALJ must fully and fairly develop the administrative record, *see Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), the ALJ need not solicit additional medical expert testimony unless "the record establishes that such an examination is necessary to enable the administrative law judge to render a decision," *Ford v. Sec'y of Health & Hum. Servs.*, 659 F.2d 66, 69 (5th Cir. 1981). The administrative record here reflects that calling a medical examiner was unnecessary. Mr. Zavala's medical record was fully developed, detailing months of therapy sessions, both physical and mental. *See, e.g.*, R.323 (detailing 2016 physical rehabilitation assessment at sports medicine clinic); R.511 (describing 2019 mental health evaluation); R.930-31 (assessing Mr. Zavala's physical health in 2019). The ALJ acted properly by resolving contradictions in the evidence. *See supra,* Part I.A.1.

Second, Mr. Zavala contends that the ALJ substituted his own opinion for those of qualified experts. *See* Dkt. 22 at 11 (citing *Fitzpatrick v. Colvin*, 2016 WL 1258477, at *5 (N.D. Tex. Mar. 31, 2016)). While an ALJ may not formulate his own medical opinions, *see Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003), the ALJ is empowered to interpret medical opinions and determine whether a claimant has the capacity to work and, ultimately, whether the claimant qualifies as disabled, *see Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); 20 C.F.R. § 404.1520c.

Mr. Zavala's cited authority is inapposite. Unlike *Fitzpatrick*, nothing in the ALJ's decisions suggests that he made any independent medical determinations. For instance, the ALJ did not conclude that Mr. Zavala did not suffer from some form of depression, anxiety, or PTSD. Rather, he determined that the levels of depression or anxiety in question were not consistent with the entirety of the medical record *concerning Mr. Zavala's capacity to work*. *See* R.23-24 (assessing Mr. Zavala's medical record in the context of his limitations and how these impacted his ability to function in a professional setting). In doing so, the ALJ weighed Dr. Fox's conclusion against the conclusions of other medical examiners—just as the ALJ was required to do. *See* R.23-24; *see supra* Part I.A.1.

In short, the ALJ's decision was supported by evidence that "a reasonable mind might accept to support a conclusion." *Greenspan*, 38 F.3d at 236. Mr. Zavala provides no valid basis for disturbing that decision.

## II. The ALJ correctly disregarded the disability determination by the Department of Veteran's Affairs.

As an alternative argument, Mr. Zavala claims that the ALJ improperly ignored his 100% disability rating from the VA. *See* Dkt. 22 at 12-14; R.445 (noting the VA's decision that Mr. Zavala is "totally and permanently disabled"). Mr. Zavala contends that the ALJ should have weighed this determination as a factor instead of discounting it as evidence. Dkt. 22 at 12-14 (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Carter v. Berryhill*, 2017 WL 2859745, at *6 (W.D. Tex. Jul. 5, 2017); *Caliguire v. Comm'r of Soc. Sec.*, 2017 WL 4247976, at *3 (E.D. Cal. Sep. 25, 2017)).

As the Commissioner correctly notes, however, Mr. Zavala's case law pre-dates important regulatory amendments. Dkt. 30 at 7-8. In 2017, the SSA changed its regulations to bar ALJs from providing "any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are ... entitled to any benefits." 20 C.F.R. § 404.1504. Thus, the law explicitly precluded the ALJ from considering Mr. Zavala's disability rating from the VA. *Id.* Rather, in

13

accordance with 20 C.F.R. § 404.1504, the ALJ weighed the evidence and determined that Mr. Zavala was not entitled to disability benefits. *See James S. v. Kijakazi*, 2021 WL 4311098, at *5 (S.D. Tex. Sept. 21, 2021) (noting the change in 20 C.F.R. § 404.1504 and affirming the ALJ's decision).

Moreover, Mr. Zavala's position ignores fundamental differences between the purposes of VA disability benefits and benefits provided by the social security administration. As the Commissioner correctly observes, disability insurance benefits aim to compensate individuals who are incapable of obtaining gainful employment. *See* Dkt. 30 at 8 n.2. Social security requirements therefore limit disability benefits to that subset of individuals. *See Summary of Disability Benefits Available Under the Social Security Disability Insurance (SSDI) and Veterans Disability Compensation (VDC) Programs*, at 2 (2012).[2] In contrast, VA disability benefits are designed to compensate veterans who served in the line of duty. *Id* at 1. Employability is not a factor. *Id.* This distinction reinforces why a VA determination does not and should not control whether an individual qualifies for social security benefits. The ALJ therefore correctly disregarded the VA's disability decision.

---

[2] Available at http://www.fas.org/sgp/crs/misc/R41289.pdf.

## Recommendation

The Commissioner has shown that the ALJ's decision in this case is supported by substantial evidence. It is therefore **RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment (Dkt. 23), **DENY** Plaintiff's motion for summary judgment (Dkt. 22), and affirm the decision of the ALJ.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 4, 2022, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge